Aileen Davis FINK, Ph.D., Appellant–
Petitioner Below,

v.

**BOARD OF EXAMINERS OF PSYCHOLOGISTS, Appellee–
Respondent Below.**

**Civ.A. No. 96A–03–001–FSS.**

Superior Court of Delaware,
New Castle County.

Submitted: May 28, 1996.
Decided: Aug. 30, 1996.

---

**4.** *Stearn v. Koch, supra.*

David J. Ferry, Jr., Ferry, Joseph & Fink, P.A., Wilmington, for Appellant–Petitioner Below.

Malcolm S. Cobin, Assistant State Solicitor, Wilmington, for Appellee–Respondent Below.

## OPINION

SILVERMAN, Judge.

This is an appeal by Aileen Davis Fink, Ph.D., from the denial by the Board of Examiners of Psychologists of her application for a license. *The Board found, as a matter of law, that because Appellant had not completed her application at the time the General Assembly enacted 70 Del.Laws 57 (1995), which increased the licensing requirements for psychologists, and Appellant did not meet the new requirements, Appellant does not yet qualify for licensure.*

### I.

After years of schooling, Appellant received her doctorate in psychology in December 1994. On May 12, 1995, Appellant applied to the Board of Examiners of Psychologists for a license, pursuant to 24 *Del C.* § 3507 (1987). When Appellant submitted her application, she almost met the requirements of § 3507, including more than five years of post-master's supervised experience; however, Appellant had not sat for and passed the written Examination for Professional Practice in Psychology (EPPP), which she would take in five months, during October 1995.[1] By letter dated May 22, 1995, the Board acknowledged receipt of Appellant's

---

1. The EPPP examination is offered twice a year: February and October. The record is unclear as to why Appellant did not sit for the EPPP in February 1995. Similarly, the record is silent as to why Appellant submitted her incomplete application in May 1995. These facts might have been significant, especially if Appellant's timing simply was unfortunate, was a function of regulatory constraints or, conversely, it was an attempt to act before passage of 70 *Del.Laws* 57. Moreover, it is unclear as to when Appellant actually became eligible to sit for the EPPP. Even in the perfunctory factual record made by the Board, there is evidence suggesting that Appellant completed five years of supervised post-master's experience well before she received her Ph.D. Thus, had she passed the EPPP and submitted her application at her first opportunity, she might have avoided 70 *Del.Laws* 57. Because the Board has been content to rely entirely on the legal impact of 70 *Del.Laws* 57, it has denied the Court the opportunity to consider alternatively whether Appellant's predicament is attributable to delay on her part rather than legislative line drawing.

application. The Board did not consider Appellant's application immediately because, according to the Board, "... the application was not complete, in that the examination had not yet been taken...."

The legislative revision of the Delaware Code's Title 24 formally began on March 16, 1995, with the introduction of Senate Bill 61. After clearing the Senate on March 28, 1995, Senate Bill 61 was introduced in the House on March 29, 1995 and referred to committee. The bill returned to the floor and it was tabled on April 13, 1995. The bill was lifted from the table and passed with amendments on May 18, 1995. On June 1, 1995 the Senate passed Senate Bill 61 with amendments and sent the bill to the Governor. On June 12, 1995, the Governor signed Senate Bill 61, which became 70 *Del.Laws* 57. The new law revised the entire Chapter 35 of the Delaware Code's Title 24, including the license requirements in § 3507. The new statute became effective upon signing.[2]

As expected, the following October, Appellant sat for the EPPP. Appellant testified that she received her passing results in November. Once the Board received Appellant's EPPP results her application was complete and the Board considered it during its December 11, 1995 meeting. The Board denied Appellant's application because she had not fulfilled the modified requirements under the newly enacted 24 *Del.C.* § 3508 (1996).[3] Appellant requested a hearing under the Administrative Procedures Act, 29 *Del.C.*

§ 10133 (1987), which was held on January 29, 1996. On February 28, 1996, by written opinion, the Board confirmed its denial of Appellant's application because "... Applicant does not meet the present requirements for licensure as set out in 24 *Del.C.* § 3508 in that she does not have two years post doctoral experience as required by 24 *Del.C.* § 3508(a)(2)."[4]

## II.

As indicated above, one of the effects of the June 12, 1995 legislation was a change in the licensing requirements for psychologists. At the time Appellant originally submitted her application the requirements included, "... after receiving the doctoral degree, at least 2 years of supervised experience in psychological work ... *or ... at least 5 years of supervised experience ... after receiving the master's degree...*." 24 Del.C. § 3507 (emphasis added). Appellant met the alternative requirement of five years supervised experience after receiving her master's. However, under the revised law that became effective while Appellant was waiting to take the EPPP and to qualify for a license, five years of supervised experience after a master's ceased to satisfy the statutory minimum requirements and two years of post-doctoral experience became mandatory.[5]

In sum, the Board found that when Appellant originally submitted her application in May 1995, it was incomplete in that she had not passed the EPPP. By the time Appel-

---

**2.** The Court does not know what to make of Appellant's assertion that:

At the time [Appellant] applied to the Board, the Board did not inform her of a proposed change in the law regarding the licensing of psychologists, nor did anyone else inform her of such a change.

First, the legislative process is open, and the proposed law became a matter of public record in March 1995. Besides, by the time Senate Bill 61 was introduced, Appellant had missed the February 1995 EPPP and she was fated to wait to take it no sooner than October 1995.

**3.** Twenty four *Del.C.* § 3508 replaced 24 *Del.C.* § 3507.

**4.** Twenty four *Del.C.* § 3508 provides:

(a) An applicant who is applying for licensure as a psychologist under this chapter shall sub-

mit evidence, verified by oath and satisfactory to the Board, that such person: (2) has had, after receiving the doctoral degree, at least 2 years of supervised professional experience in psychological work of a type satisfactory to the Board....

**5.** Both the former § 3507 and the current § 3508 require that applicants submit evidence that they passed the EPPP. The original 24 *Del.C.* § 3507 provided in pertinent part that applicant "shall submit evidence ... [indicating competence] in the practice of psychology as shown by written examination...." Under the current § 3508, applicants "shall submit evidence" that they have "achieved the passing score on the written standardized Examination for Professional Practice in Psychology...." Although, the legislature changed the language used for this requirement, the effect is the same: applicants "shall" submit proof that they have passed the EPPP.

lant passed the EPPP, her application was still incomplete because she failed to meet the recently enacted requirement of two years post-doctoral supervised experience. As discussed below, Appellant's claim is that the rules changed for her in the middle of the game.

### III.

The Court has limited appellate review over the factual findings of an administrative agency. The Court's function is simply to determine whether the agency's decision is supported by substantial evidence. *General Motors v. Freeman*, Del. Supr., 164 A.2d 686, 688 (1960); *Johnson v. Chrysler Corp.*, Del.Supr., 213 A.2d 64, 66 (1965). " 'Substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Oceanport Ind. v. Wilmington Stevedores*, Del.Supr., 636 A.2d 892, 899 (1994); *Battista v. Chrysler Corp.*, Del.Super., 517 A.2d 295, 297 (1986), *appeal dismissed*, Del.Supr. 515 A.2d 397 (1986). The appellate court does not weigh the evidence, determine questions of credibility, or make its own factual findings. *Johnson v. Chrysler*, 213 A.2d at 66. It merely determines if the evidence is legally adequate to support the agency's factual findings. 29 *Del.C.* § 10142(d). If such evidence exists and the agency has made no error of law, its decision must be affirmed. *Mooney v. Benson Mgt. Co.*, Del.Super., 451 A.2d 839 (1982).

### IV.

Appellant does not dispute the fact that her application does not meet the current license requirements under § 3508. Appellant's arguments revolve around the timing of her first application and the Board's refusal to consider her application under the old 24 *Del.C.* § 3507.

First, Appellant argues that the Board should have evaluated her application under 24 *Del.C.* § 3507 as it was in effect when she originally submitted her application. Appellant argues that because she submitted her application before June 12, 1995, and " . . . she met all of the requirements which she possibly could have met at the time of her application [since the EPPP exam was not offered until the following October] . . ." her application should have been evaluated under the old law. Specifically, Appellee claims: "Since the new law was passed on June 12, 1995, it cannot impact events that transpired before that date." Appellee reminds the Court "that statutes are applied presumptively not retroactively, and that they only apply retroactively if they specifically so state."

Appellant argues in the alternative that she belongs to a limited class of candidates whose applications were not acted upon before the law changed and who relied on the old law's post-master's provisions. According to Appellant: "This class has a due process claim to a grandfather clause giving them the opportunity to prove that their particular combination of education and experience is equivalent to that of a doctorate with two years' post-doctoral work experience."

### V.

It is hornbook law that the State's police power generally embraces licensing requirements for psychologists. *Walton v. Board of Examiners of Psychologists*, Del.Super., C.A. No. 90A–JN–005, Barron, J. 1991 WL 35716 (Feb. 21, 1991). Appellant does not contend seriously that the General Assembly could not require that psychologists have two years of post-doctoral supervised experience. Similarly, Appellant cannot argue seriously that the General Assembly, as a general proposition, could not eliminate the statutory provision allowing applicants with master's degrees and five years' experience to be licensed as psychologists. Appellant maintains, in effect, that because she filed her initial paperwork before the new requirements were enacted, they do not apply to her.

In reconsidering Delaware's licensing requirements for psychologists, the General Assembly presumably decided that where psychologists are concerned, a master's degree and five years of supervised experience is not adequate to promote the public's wel-

fare. The General Assembly obviously determined that for the good of their patients and the public, psychologists in Delaware must have two years of post-doctoral supervised experience. That is a classic legislative determination, which courts may not second-guess absent a showing of the law's irrationality. *State v. Durham*, Del.Super., 191 A.2d 646, 648 (1963) (State may regulate professions for the purpose of protecting the health, safety and welfare of its citizens). *Opinion of the Justices*, Del.Supr., 330 A.2d 764 ("absent constitutional limitations, General Assembly has unrestrained authority to exercise its proper legislative powers in any manner it sees fit.")

■ In revising the licensing requirements for psychologists, the General Assembly did not address, much less create, an exception for candidates with incomplete applications pending as of the revisions' effective date. Presumably, the General Assembly's failure to provide for candidates with pending, incomplete applications was deliberate. Moreover, the General Assembly's abandonment of the provision allowing non-doctorates to become psychologists is tantamount to a legislative finding that a master's and five years of experience are not equivalent. The new law and due process do not require the Board to weigh any candidate's credentials in order to decide whether they are as heavy as the law's minimum requirements.[6] In short, when the General Assembly revised the licensing law, the Board could not have licensed Appellant because Appellant had not passed the licensing examination. The effect of the General Assembly's act was that all persons, including Appellant, who were not licensed as psychologists as of June 12, 1995, would be required to have two years of post-doctoral supervised experience before they could become licensed psychologists in Delaware. This is so, notwithstanding Appellant's unilateral decision to begin filing her paperwork while Senate Bill 61 was pending.

In this light, it is apparent that the Board did not apply the new requirements retroactively in Appellant's case. This certainly is not a situation where Appellant had a license and the Board revoked it because of after-enacted requirements. *Compare, Berger v. Bd. of Psychologist Examiners*, D.C.Cir., 521 F.2d 1056 (1975).[7] This is not even a case where, as suggested above, all of Appellant's paperwork had been submitted and but for the Board's inaction she would have received her license before the new requirements came into effect. *Compare, Sgromolo v. Asbury Park*, N.J.Supr., 46 A.2d 661, 662 (1946). At the moment that the new requirements became effective here, Appellant had yet to pass the required licensing examination. Through no fault of the Board's, at the moment the requirements changed, Appellant was not qualified for the Board's consideration as an applicant.[8]

## VI.

The Court is sympathetic to the fact that the new requirements will work a hardship

---

6. The Court notes here that Appellant did not clearly raise before the Board the claim that Appellant is entitled to prove that her experience is equivalent to the new requirements. At best, the record contains disconnected bits of evidence that loosely support Appellant's unlitigated contention that her particular combination of education and experience is equivalent to that of two years' post-doctoral experience.

7. Appellant relies on *Berger* for the proposition that:

   The State in Dr. Fink's case may not change statutory criteria without providing for those who have already begun the licensing process.

   Appellant reads far too much into *Berger*. No authority, including *Berger*, holds that a candidate's filing of an application for a license freezes solid the requirements, even when the candidate is not qualified at the time of filing.

8. The parties have litigated heavily the applicability of *Walton v. Board of Examiners of Psychologists*, Del.Super., C.A. No. 90A–JN–005, Barron, J. 1991 WL 35716 (Feb. 21, 1991). Mostly, the arguments pass each other like ships in the night. First, Appellant correctly argues that under *Walton* a decision by the Board based on an error of law is invalid. Appellant also correctly contends that the facts of *Walton* and this case are distinguishable. The Board correctly observes that *Walton* holds, in part:

   Thus an applicant must comply with all of the laws and regulations before receiving entitlement to a license.

   In summary, *Walton* generally addresses some of the due process considerations here. However, *Walton* does not touch on the core issue of this case, i.e. which version of Chapter 35 applies to Appellant's factual situation.

on Appellant. Because Appellant cannot receive a license now, Appellant may have lost a job offer.[9] Nevertheless, as discussed above, the General Assembly decided that as of June 12, 1995, no one could become a psychologist in Delaware who did not have two years of supervised experience after receiving a doctorate. The Court must presume that in weighing the merits of the new law, the General Assembly balanced the best interest of the public in general against the temporary hardship that the new law might impose on individuals with pending, yet incomplete applications. This presumption is especially apt when the particulars of Appellant's case are taken into consideration.

9. In this regard, the Court notes that Appellant did not apply for and receive the job offer until November 1995. Also, considering the fact that Appellant received her doctorate in December 1994, she might qualify for license as a psychologist less than four months from now, in December 1996.

## VII.

For the foregoing reasons, the Court finds that the Board of Examiners of Psychologists' findings of facts are supported by substantial evidence and the Board did not error as a matter of law. Accordingly, the Board's February 25, 1996 decision is **AFFIRMED.**

**IT IS SO ORDERED.**